# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FRANK ATKINS (#504572)**                                  **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                                  **NO.  18-1013-JWD-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 24, 2021.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

1

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**FRANK ATKINS (#504572)**                                     **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                                **NO.  18-1013-JWD-SDJ**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the application of Petitioner Frank Atkins for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

#### Procedural History

On August 1, 2012, Petitioner was indicted in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder and one count of attempted second degree murder. After a jury trial in June of 2014, Petitioner was convicted as charged. On November 10, 2014, Petitioner was sentenced to life plus fifty years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence.

Petitioner filed an appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"). His conviction and sentence were affirmed by the First Circuit on October 31, 2016.[1] On September 15, 2017, the Louisiana Supreme Court denied Petitioner's petition for a writ of certiorari.[2] On or about November 13, 2018, Petitioner filed the instant application for a writ of habeas corpus, asserting the following claims for relief: (1) insufficient evidence to support a

---

[1] *State v. Atkins,* 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771.
[2] *State v. Atkins*, 225 So.3d 485 2016-2221(La. 9/15/17).

conviction of second degree murder, (2) prosecutorial misconduct/improper comments during voir dire, (3) trial court failed to hold a competency hearing, (4) he was denied the right to testify, and (5) ineffective assistance of appellate counsel.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal,[3] are as follows:  Petitioner and Kayla Atkins, one of the two victims, were married on September 19, 2011. On May 1, 2012, while Kayla was pregnant with Petitioner's child, she drove to Petitioner's grandmother's house at 2025 Bay Street in Baton Rouge, Louisiana, to retrieve a rental car from Petitioner. When Kayla asked Petitioner to give her the keys to the rental car, an argument ensued. Petitioner entered his grandmother's house and exited with a gun. Petitioner's grandmother intervened, and Kayla was able to run to the rental vehicle and leave.

On June 17, 2012, Kayla returned to the Bay Street house to drop off Petitioner because the two were fighting. Kayla told Petitioner that she no longer wanted to be in a relationship with him. When Kayla drove up to the house, Petitioner jumped across the seat and began choking her while the vehicle was still in "drive." She jumped out of the vehicle and ran to the front porch of the house. Petitioner began choking her again and put her into a headlock until she lost consciousness. Two men were able to pull Petitioner off of Kayla. The vehicle, which was still in "drive," crashed into another vehicle. When Kayla regained consciousness, she ran toward her vehicle and jumped on top of it. Petitioner followed her. Kayla then jumped on top of the vehicle that her vehicle had run into. Petitioner followed Kayla, but police officers arrived on the scene, and Petitioner was arrested. The following day, Kayla filed for and was issued a restraining order

---

[3] *State v. Atkins,* 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771.

against Petitioner and purchased a gun. According to Kayla, Petitioner told her that he would kill her if she ever tried to leave him.

On June 19, 2012, after Petitioner had been released from parish prison, he asked Kayla whether he could go on vacation with her. She told him that he could not, and he asked her to return his grandmother's cellular telephone that he left in Kayla's vehicle. Kayla's cousin, Andrea Scott, drove her to the Bay Street house in Kayla's mother's vehicle to return the cellular telephone. Kayla sat in the front passenger seat, and Andrea's three-year-older daughter sat in the backseat. Upon arrival, Kayla sent a text message to Petitioner asking him to come outside. Petitioner walked toward the vehicle, and Kayla handed him the phone. Petitioner asked, "'B,' you think I'm going to—I'm just going to let you leave [?]" He then shot at Kayla four or five times. After firing the shots, Petitioner walked away from the vehicle. The shooting was recorded on a video surveillance camera at a bar across the street from the Bay Street house.

Kayla fell into Scott's lap, unable to move her body. Scott drove to a parking lot off of Scenic Highway and Choctaw Drive and contacted the police, who arrived approximately five minutes later. Kayla, who was four-months pregnant with Petitioner's child, was transported by ambulance to the Baton Rouge General Medical Center Mid–City campus. She suffered from gunshot wounds to the base of her head, back of her neck, right shoulder, and right shoulder blade, resulting in quadriplegia.

Approximately one month later, on July 25, 2012, Kayla's child, C.A., was born prematurely. Dr. Michael Fontenot, a maternal fetus medicine expert, treated Kayla and testified that C.A.'s pre-term delivery was a result of Kayla's quadriplegic state, as it appeared to be a result of persistent prolonged systemic inflammation due to traumatic injury. Less than one hour after C.A. was born, she was pronounced dead. Dr. Cameron Snider, East Baton Rouge Parish Chief

Forensic Pathologist, determined C.A.'s gestation period to be twenty-three weeks and testified that C.A. died from respiratory failure due to the prematurity. Dr. Snider classified C.A.'s death as a homicide. According to Dr. Snider, C.A.'s normal growth was interrupted because of complications resulting from Kayla's gunshot wounds, and otherwise, C.A. would have developed normally.

### Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[4] Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination.[5] Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective

---

[4] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).
[5] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

reasonableness.[6] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[7]

## Substantive Review

### *Claim (1): Insufficient Evidence to Support Second Degree Murder Conviction*

In Claim 1, Petitioner contends that the scientific evidence presented at trial was insufficient to support his conviction for the second degree murder of his daughter, C.A. Petitioner argues that medical procedures were the direct cause of C.A.'s death and there was no evidence that he caused C.A.'s death. Specifically, Petitioner contends that the baby died due to prematurity. Labor was induced due to sepsis, but the prosecution never proved that the mother's life was in grave danger as the result of the sepsis. Petitioner contends that the gunshot wounds did not kill C.A., rather, her death was caused by the decisions of the physicians.

Petitioner raised this issue in his direct appeal to the First Circuit. After a review of the law and evidence, the First Circuit found this assignment of error to be without merit. The First Circuit concluded,

> "…any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder, including the defendant's specific intent to kill C.A. and that her death was the result of the shooting.[8]

The United States Supreme Court set out the test for analyzing constitutional challenges to the sufficiency of the evidence in *Jackson v. Virginia*,[9] which held that "the relevant question is

---

[6] *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

[7] 28 U.S.C. § 2254(e)(1).

[8] *State v. Atkins,* 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771 at *6.

[9] 443 U.S. 307 (1979).

whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt."[10] A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact finder.[11] In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[12] Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."[13]

As pointed out by the First Circuit, second degree murder in Louisiana is "the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1A(1). A review of the record indicates that the evidence was sufficient under the *Jackson* standard to convict Petitioner of second degree murder.

Dr. Todd Fontenot, who was Kayla Atkin's attending physician and specializes in complicated pregnancies, testified that paraplegia results in gestational complications, including: higher risk of infection, systemic infection, and a higher risk of preterm labor.[14] Dr. Fontenot was brought in to consult on Ms. Atkins' case because her condition was deteriorating. The second day he saw Ms. Atkins, her cervix was dilated and she had some bleeding, leading to a conclusion that she was in preterm labor.[15] At that point, a ultrasound was conducted showing Ms. Atkins was 22

---

[10] *Id* at 319.
[11] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).
[12] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (*quoting Herrera v. Collins*, 506 U.S. 390, 402 (1993)).
[13] *Parker v. Matthews*, 567 U.S. 37 (2012); *see also, Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).
[14] R. Doc. 13-2, p. 202.
[15] R. Doc. 13-2, p. 198.

weeks along, which was before viability.[16]  The decision was made to augment labor and enhance

the process to improve the odds of survival for Kayla Atkins.[17] Dr. Fontenot testified that the

preterm labor was caused by the trauma that Kayla Atkins suffered because it caused persistent,

prolonged, systemic inflammation.[18]  Dr. Fontenot testified that there were no complications in

Kayla Atkins pregnancy before the shooting.[19]

    Ashley Bordelon, R.N., testified that she was present when the baby was delivered.[20] She

testified that the baby was born with a heart rate and she heart the baby gasp for air.[21] Rhonda Ray,

R.N., testified that she assumed care of the baby and Kayla Atkins when she began her shift.[22] At

that time, the baby had a low respiratory rate and heart rate. Thirty minutes later when she checked

the baby's vital signs, she was deceased.[23]

    The forensic pathologist that performed the autopsy on C.A., Dr. Cameron Snider, also

testified at trial. Dr. Snider testified that the manner of death was homicide[24] and the cause of death

was respiratory failure due to preterm delivery.[25] Dr. Snider testified that the gunshot wounds

caused an infection around Kayla Atkins' womb that led to the preterm delivery.[26]

    The Louisiana First Circuit reviewed all of the essential elements of the crime and held that

a rational trier of fact could have concluded that Petitioner caused the death of C.A. by shooting

Kayla Atkins. Indeed, all the medical and scientific evidence presented at trial indicated that Kayla

Atkins' preterm labor was the ultimate result of the paraplegia from the gunshot wounds. A

---

[16] R. Doc. 13-2, pp. 198, 200.
[17] R. Doc. 13-2, p. 200.
[18] R. Doc. 13-2, pp. 193, 194, 201.
[19] R. Doc. 13-2, p. 202.
[20] R. Doc. 13-2, p. 209.
[21] R. Doc. 13-2, p. 209.
[22] R. Doc. 13-3, p. 3.
[23] R. Doc. 13-3, p. 4.
[24] R. Doc. 13-3, p. 20-21.
[25] R. Doc. 13-3, p. 4.
[26] R. Doc. 13-3, pp. 18, 25, 26.

thorough review of record demonstrates that that no evidence was presented even suggesting anything other than the gunshot wounds caused the preterm labor. It is not this Court's role to second guess the jury's role as a fact finder. Louisiana's appellate courts' application of the *Jackson* standard on sufficiency of the evidence was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. Petitioner is not entitled to relief on Claim 1.

### Claim (2): Prosecutorial Misconduct/Prejudicial Comments During Voir Dire

In Claim 2, Petitioner contends that the prosecutor engaged in misconduct during voir dire while discussing hypothetical scenarios to illustrate the concepts of "transferred intent" and "attempt." Specifically, Petitioner complains about the following interactions between the prosecutor and potential jurors:

> **By Ms. Hines:**
> Think about it this way, I go to a party and I'm intended to kill my ex-boyfriend but I'm a terrible shot. So, I walk into that party and there are people dancing up a storm, moving back and forth and everything, and I go up and I fire and I end up killing Mr. Barnett instead.
>
> Q:    Mr. Barnett, You're not my ex-boyfriend, are you?
> A:    Sadly, No.[27]
>
> **By Ms. Hines:**
> If I bring that ball in and I throw it at Mr. Barnett, I'm guilty of hitting Mr. Barnett, and I'm also guilty of attempting to hit my ex-boyfriend, right? I did any act trying to—that was in furtherance of committing a crime. Does that make sense? [28]

Petitioner asserts that the prosecutor's comments unfairly prejudiced the jury because the comments had the jurors think of themselves as crime victims.

---

[27] R. Doc. 13-1, p.103.
[28] R. Doc. 13-1, p.105.

Petitioner raised this issue in his direct appeal to the First Circuit. The First Circuit concluded that the assignment of error was without merit, "nothing about the use of the hypothetical scenarios was prejudicial to the defendant, nor was he deprived of a fair trial or due process based on the prosecutor's use of the hypothetical use of the scenarios."[29]

A claim of prosecutorial misconduct is actionable on federal habeas review only when the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.[30] Due process is only violated when the alleged conduct deprived the petitioner of his right to a fair trial. A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted.[31] Generally, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.[32] The conduct must either be so persistent and pronounced, or the evidence so insubstantial that, but for the remarks, no conviction would have occurred.[33]

The requisite showing is a difficult one, and Petitioner falls far short of demonstrating a violation that impinged on his constitutional right to a fundamentally fair trial. The prosecutor's statements were passing references in the context of a lengthy voir dire and in the context of a trial where an overwhelming amount of evidence of guilt was presented to the jury.[34] The jury heard testimony from Kayla Atkins, an eyewitness to the shooting, Kayla Atkins' physicians and nurses, the investigating police officers, and the pathologist. They also were able to watch footage of the

---

[29] *State v. Atkins,* 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771 at *4.
[30] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).
[31] *Styron v. Johnson,* 262 F.3d 438, 454 (5th Cir. 2001).
[32] *Darden*, 477 U.S. at 181.
[33] *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1985).
[34] The Court will pretermit a discussion of whether the prosecutor's remarks were improper.

shooting that was captured by the surveillance cameras of a nearby business.[35] Claim 2 is without merit and should be dismissed.

### Claim (3): Failure to Hold a Competency Hearing

In Claim 3, Petitioner contends that his Fifth and Fourteenth Amendment rights were violated when the trial court failed to hold a competency hearing prior to trial. Petitioner complains that the procedures for a competency hearing under Louisiana Code of Criminal Procedure were not followed. First, Petitioner asserts that a full hearing under Louisiana Code of Criminal Procedure Art. 647 should have been conducted. Petitioner alleges that an informal meeting took place the day before trial, wherein his attorney, the prosecution, and the judge agreed to a stipulation on his competency, which was read into the record on the morning of trial. Next, Petitioner asserts that the trial court never decided the issue of his mental capacity because the judge merely agreed to the parties' stipulation. Petitioner also appears to be asserting a claim for ineffective assistance of counsel, claiming that his counsel should have objected to the procedures utilized by the trial court in connection with the issue of his competency. Petitioner raised this issue in his appeal to the First Circuit, which dismissed the claim as meritless based on his counsel's stipulation to his competency.

The record reflects that the trial court appointed a sanity commission composed of Dr. Brandon Romano, Dr. Jose Artecona, and Dr. John Thompson. All three physicians issued written reports concluding that Petitioner was competent to stand trial.[36] Dr. Romano concluded that Petitioner did not suffer from any psychopathy at the time of the alleged offenses "which would

---

[35] R. Doc. 13-2, p.162-164.

[36] The reports are not included in the electronic record provided by Respondents found at R. Doc. 13. The reports are included in the physical record that was provided by the Clerk of Court for the 19th Judicial District Court, in Vol. 1 of 7. The pages are not numbered for reference.

11

have impaired his ability to appreciate the nature, seriousness, or quality or his behavior or to cloud

his knowledge of wrongfulness." Petitioner refused to answer any questions regarding his

competency at the time of the offense during his evaluations with Dr. Artecona and Dr. Thompson.

On July 2, 2013, the trial court took up the issue of the sanity commission during a hearing

on an unrelated motion. The following exchange occurred:

| | |
|---|---|
| **The Court:** | All right. We have a preliminary matter of the question as to whether or not Mr. Atkins is competent to proceed? |
| **Mr. Antwine:** | Yes, Your Honor. Your Honor, we have requested a sanity commission and the doctors have submitted reports. My understanding is each have indicated that Mr. Atkins is competent to proceed. |
| **Ms. Hines:** | That's correct, Your Honor. And the state would like to offer and introduce all three of those reports into evidence. |
| **Mr. Antwine:** | We have no objection, Your Honor. |
| **The Court:** | All right. Let the reports be introduced into evidence. And for the record, would you state the names of the doctors who issued the three reports if you have that close to you? |
| **Ms. Hines:** | The first one was Dr. John Thompson, then there is Dr. Jose Artecona, and the third is Dr. Romano. |
| **The Court:** | Okay. So, will you be submitting copies of those for the record? |
| **Ms. Hines:** | I will, Your Honor. Brandon Romano. I will make copies of them so that I don't lose mine. |
| **The Court:** | All right. |
| **Ms. Hines:** | And I believe that there is a stipulation that he is competent? |
| **Mr. Antwine:** | That's correct. We will submit to the reports, to the findings of the doctors' reports. |
| **The Court:** | All right. |

| | |
|---|---|
| **Ms. Hines:** | And, Your Honor, that's both competent to proceed and was competent at the time of the offense. |
| **The Court:** | Okay. Competent to proceed and competent at the time of the incident. All right.[37] |

It is a violation of due process to try and convict a criminal defendant who lacks mental competence.[38] The constitutional standard for competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."[39] In order to protect the substantive right, a state must provide a criminal defendant with procedures to ensure that an accused is not tried or convicted while incompetent.[40] Specifically, a trial court must conduct an inquiry into an accused's competence if the evidence raises a bona fide doubt as to competency.[41] Different standards govern claims of the violation of the substantive and procedural competence requirements.[42]

If a petitioner seeks federal habeas corpus relief based on an alleged violation of the substantive requirement, *i.e.,* if he asserts that he was tried while he was in fact incompetent in violation of his due process rights, he must present facts sufficient to "positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial."[43] This threshold burden is "extremely heavy,"[44] and Petitioner has not even alleged that he was, in fact, incompetent to stand trial. Accordingly, there is no basis upon which to find Petitioner was incompetent to proceed at trial.

---

[37] R. Doc. 13-1, pp. 32-33.
[38] *Cooper v. Oklahoma,* 517 U.S. 348 (1996); *Pate v. Robinson,* 383 U.S. 375 (1966); *Carter v. Johnson,* 131 F.3d 452 (5th Cir.1997).
[39] *Dusky v. United States,* 362 U.S. 402 (1960).
[40] *Holmes v. King,* 709 F.2d 965 (5th Cir.1983).
[41] *Carter, supra,* at n. 10.
[42] *Carter, supra,* at 459; *Lokos v. Capps,* 625 F.2d 1258 (5th Cir.1980).
[43] *Carter, supra,* at 460.
[44] *Johnson v. Estelle,* 704 F.2d 232 (5th Cir.1983).

In contrast, a petitioner seeking federal habeas relief on the ground that his procedural rights were violated must be able to point to evidence presented to the trial court that raised a bona fide doubt about competency at the time of trial.[45] The test in such an instance is an objective one based on what was known to the trial court at the time of trial,[46] The requirement that the trial court conduct further investigation, however, is not without limits, even after sufficient evidence to establish a bona fide doubt about competency has been presented. The fact-finding process must rest on procedures and evidence "sufficient to permit a trier of fact reasonably to assess an accused's competency against prevailing medical and legal standards."[47] The adequacy of the procedures varies according to the existing "fact matrix," but the Fifth Circuit has "never suggested that a state court must conduct a full-blown competency hearing every time there is the slimmest evidence of incompetency."[48]

Petitioner complains that the procedures used by trial court with respect to the sanity commission were inappropriate and he received ineffective assistance of counsel because his trial attorney failed to object to the inappropriate procedures.  Namely, Petitioner contends that he should have had a formal competency hearing and the trial judge should have made a formal determination of his competency on the record. Neither of these contentions entitle Petitioner to habeas relief.

First, as discussed above, the Fifth Circuit has never required a full-blown competency hearing. The "fact matrix" presented to the trial court was three reports from court-appointed psychiatrists filed into the record, all whom found Petitioner competent to stand trial based on the

---

[45] *Holmes, supra.*

[46] *Carter, supra* (indicating that "[i]f the trial court receives evidence, viewed objectively, that should raise a reasonable doubt about competency, yet fails to make further inquiry, this constitutes a denial of a fair trial"). *See also Lokos v. Capps, supra.*

[47] *Holmes, supra.*

[48] *Id. See also United States v. Horovitz,* 584 F.2d 682 (5th Cir.1978).

legal criteria set forth in *State v, Bennett*, 345 So.2d 1129 (La. 1977). Two of the three psychiatrists (Drs. Artecona and Johnson) administered the Georgia Court Competency Test, on which Petitioner earned a passing score. The court-appointed expert reports allowed the trial court to reasonably assess Petitioner's competency against prevailing medical and legal standards, which raised no "bona fide doubt" about Petitioner's competency to stand trial. Accordingly, due process did not require further inquiry, including an evidentiary hearing. The First Circuit's ultimate dismissal of Petitioner's claim on this issue was neither contrary to, nor an unreasonable application of federal law.[49]

As noted by the First Circuit, Petitioner's complaint about the trial court's failure to make a finding about his competency is not borne out by the record. The trial judge did make a statement on the record after the parties entered the stipulation that Petitioner was both competent to proceed and competent at the time of the incident.[50] This contention is without merit.

Petitioner's ineffective assistance of counsel claim also fails. To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*.[51] The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense").[52]  The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might

---

[49] While the First Circuit did not address the federal due process implications raised by Petitioner in its opinion, a federal habeas court is concerned with the ultimate determination of the state courts, not the reasoning. *Charles v. Stephens,* 736 F.3d 380, 387–88 (5th Cir. 2013).
[50] R. Doc. 13-1, pp. 32-33.
[51] 466 U.S. 668 (1984).
[52] *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 686-89, 693).

be considered sound trial strategy.[53]  As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[54]

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.[55]  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[56]

The first question is whether Petitioner's counsel provided effective assistance under prevailing professional norms. It is important to note that Petitioner does not take the position that he was in fact incompetent to stand trial. His complaint is solely procedural in nature, in that he never received a full-blown competency hearing. As discussed above, the dictates of due process, in particular the "fact matrix" and circumstances of Petitioner's case, did not require a full-blown competency hearing. The *Strickland* standard requires the Court to presume counsel's choice to enter the stipulation was a strategy choice and to be highly deferential to that choice. Given the fact that all three physicians agreed that Petitioner was competent to stand trial, it certainly would have been a sound strategy to avoid a hearing that had the potential to provide the prosecution with additional inculpatory evidence. Accordingly, Petitioner's counsel's performance was not

---

[53] *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689).
[54] *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).
[55] *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689).
[56] *See Richter*, 562 U.S. at 104 (*citing Strickland*, 466 U.S. at 687).

deficient, he cannot meet the first prong of the *Strickland* standard, and this claim is without merit.[57]

### Claim (4): Right to Testify

In Claim 4, Petitioner contends that he was denied the right to testify. Petitioner alleges that he repeatedly told his trial counsel that he wanted to testify. Petitioner also alleges that his trial counsel told him that the decision on whether he would testify would solely be made by trial counsel. Petitioner raised this issue in his appeal to the First Circuit. The First Circuit found the assignment of error to be without merit, as the record demonstrates Petitioner waived his right.

At the close of the prosecution's case, the following colloquy took place:

| | |
|---|---|
| **The Court:** | Now, Mr. Atkins, you have the right to testify. That's your decision. Is this something that you want to do? |
| **The Defendant:** | Yes, ma'am. |
| **The Court:** | You want to testify? |
| **The Defendant:** | Oh, No, ma'am |
| **The Court:** | You do not want to testify? |
| **The Defendant:** | No ma'am |
| **The Court:** | Okay. Now, what other questions would you guys want me to ask? |
| **Mr. Antwine:** | None, Your Honor. Just ask whether or not he has been advised of that. |
| **The Court:** | Okay. But you have been advised by your attorney that you do have the right? Has your attorney spoken with you about that? |
| **The Defendant:** | Yes ma'am. |

---

[57] Although we need not reach the issue, Petitioner also cannot meet the second prong of the *Strickland* standard. Due to the unanimous opinions of the court-appointed experts, Petitioner cannot show that he was prejudiced by his attorney's failure to object to procedures used to determine his competency to stand trial.

| | |
|---|---|
| **The Court:** | You are choosing not to testify of your own free will |
| **The Defendant:** | Yes ma'am.[58] |

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.[59]  It is one of the rights that "are essential to due process of law in a fair adversary process."[60]  The right to testify in one's own defense is protected by the Fifth Amendment's privilege against self-incrimination, the Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process clause.[61]  When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."[62]

As discussed above, to establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense").[63]

In deciding this issue on appeal, the First Circuit noted that the colloquy at the close of the prosecution's case contradicted Petitioner's contention that his counsel "never once informed him that it was his right to determine if he would testify." The First Circuit further concluded that Petitioner was advised of his right to testify and chose not to testify of his own free will.[64]  As

---

[58] R. Doc. 13-3, p. 71-72.
[59] *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987).
[60] *See Rock*, 483 U.S. at 51.
[61] *See Rock*, 483 U.S. at 51-53.
[62] *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)).
[63] *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 686-89, 693).
[64] *State v. Atkins*, 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771 at *11.

discussed above, the *Strickland* standard requires the Court to presume counsel's recommendation that Petitioner not testify was a strategy choice, and the Court is highly deferential to that choice. Petitioner has not shown that his attorney did not provide reasonably effective assistance under prevailing professional norms under the circumstances.

Because counsel's performance was not deficient, it is not necessary to consider whether the challenged decision undermines confidence in the outcome of the petitioner's trial.  However, the Court observes that Petitioner cannot meet *Strickland's* prejudice element.  Considering the overwhelming evidence of Petitioner's guilt, including the eyewitness and medical testimony, there is no basis for concluding that Petitioner's self-serving testimony would have resulted in a different outcome.  Claim 4 is without merit.

### Claim (5): Ineffective Assistance of Appellate Counsel

In Claim 5, Petitioner contends that he received ineffective assistance of appellate counsel because his appellate counsel failed to argue certain issues on appeal. Petitioner complains that he did not have counsel of his own choice on appeal and was forced to use counsel from the Louisiana Appellate Project, who never spoke to him. Petitioner's appellate counsel submitted a brief to the First Circuit with two assignments of error, unconstitutionally excessive sentence and ineffective assistance of trial counsel for failure to file a motion for reconsideration of sentence.[65] The First Circuit allowed Petitioner to submit a *pro se* brief, in which he asserted the same five claims as the instant habeas petition: insufficient evidence to support second degree murder conviction, prosecutorial misconduct/prejudicial comments during voir dire, failure to hold competency hearing, denial of the right to testify, ineffective assistance of appellate counsel.

---

[65] R. Doc. 13-1, pp. 163-175.

In addressing Petitioner's assignment of error of ineffective assistance of appellate counsel, the First Circuit discussed the *Strickland* standard and held,

> Having found no merit in any of the pro se assignments of error raised by the defendant, we conclude that the defendant's claim of ineffective assistance of appellate counsel for failure to raise those claims is also without merit…Even if the defendant could show that his appellate counsel's performance was somehow deficient, this claim would necessarily fail because the defendant can show no prejudice. Therefore, the record discloses evidence sufficient to dispose to the defendant's ineffective assistance of appellate counsel claim. This assignment of error is without merit."[66]

The First Circuit's decision is neither contrary to nor an unreasonable application of federal law. As discussed herein, none of Petitioner's claims are meritorious. It necessarily follows that appellate counsel's assistance was not deficient and Petitioner was not prejudiced because his appellate counsel did not raise meritless claims on appeal. Claim 5 is without merit.

### Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[67] Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.[68] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[69] In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the

---

[66] *State v. Atkins,* 2016-0606 (La. App. 1 Cir. 10/31/16), 2016 WL 6427771 *12-13.
[67] 28 U.S.C. § 2253(c)(1)(A).
[68] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[69] 28 U.S.C. § 2253(c)(2).

district court was correct in its procedural ruling."[70]   In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[71] In the instant case, reasonable jurists would not debate the denial of  Petitioner's application or the correctness of the procedural or substantive ruling.  Accordingly, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

**Recommendation**

For the reasons set forth herein, the undersigned **RECOMMENDS** that Petitioner's application for habeas corpus relief be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on September 24, 2021.


_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[70] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[71] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).